**In re AMERICAN CAPITAL EQUIP-
MENT, LLC and Skinner En-
gine Company, Debtors.**

**Civ.A. No. 05–048.
Bankruptcy No. 01–23987.**

United States District Court,
W.D. Pennsylvania.

May 2, 2005.

---

Sally E. Edison, Lead Attorney, McGuire Woods LLP, Pittsburgh, PA, for Debtor.

Joseph M. Fornari Jr., on Behalf of the United States Trustee, Pittsburgh, PA, for Trustee.

## MEMORANDUM

LANCASTER, District Judge.

This is an action in bankruptcy. On April 16, 2001, debtor Skinner sought protection under Chapter 11 of the Bankruptcy Code. In the context of that bankruptcy case, two of debtor's Insurers objected to the allowance of certain claims, namely the Maritime Asbestos Claims. The Insurers filed their objection to those claims with the bankruptcy court on April 28, 2004. They filed the instant motion to withdraw reference of that objection on January 14, 2005.

The Insurers claim that we should withdraw reference of the objection, nearly a year after it was filed, because the issues raised in the objection are non-core and because the withdrawal would promote judicial efficiency and uniformity. The Maritime Asbestos Claimants contend that we should deny the Insurers' motion because they have no standing to make the objection or to seek withdrawal of the reference[1], and the motion is untimely. The Claimants also contend that, as a practical matter, the Insurers' motion is nothing more than an attempt to clog this court's docket and to make an end run around the bankruptcy plan confirmation process. Although we agree with the Claimants on those points, we need not reach such considerations in ruling on the Insurers' motion. Under the most basic standards defining bankruptcy court jurisdiction, there is no reason to withdraw reference of an objection to the allowance of claims. For the reasons set forth below, we will deny the Insurers' motion.

## I. BACKGROUND

In their objection filed with the bankruptcy court, the Insurers "object[ed] to the allowance of...proofs of claim" filed by three groups of Maritime Asbestos Claimants. In support of their objection the Insurers argued that: (1) the claims were improper class proofs of claim; (2) the claims were not sufficiently documented and were not self-sustaining; (3) the claims were not legally compensable; and (4) the claims must be barred or reduced pursuant to a number of legal defenses traditionally applicable to such tort claims (such as assumption of the risk, *de minimus* exposure, and contributory negligence).

This objection was filed in the bankruptcy court on April 28, 2004. The bankruptcy court has not made a ruling on the objection, not due to any delinquency, but because it is addressing the fundamental question of the Insurers' standing in the bankruptcy case, as well as other issues. Nearly a year after they filed the objection, the Insurers filed the instant motion to withdraw reference of the objection to this court.

## II. LEGAL AUTHORITY

 The district court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. 28 U.S.C.A. § 1334(b). The bankruptcy court exercises such jurisdiction under a standing order of reference, as provided by 28 U.S.C.A § 157(a). Once a Title 11 proceeding has been referred to the bankruptcy court, the district court's authority to withdraw the reference is governed by 28 U.S.C.A. § 157, which provides for both mandatory and permissive withdrawal. Under section 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own

---

1. We note that the bankruptcy court is currently addressing the issue of the Insurers' standing to participate in the bankruptcy case, a ruling on which will obviously have a direct affect on a ruling on the Insurers' instant objection.

motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

 Withdrawal from the bankruptcy court is mandatory where the district court determines that resolution of the proceeding requires consideration of both Title 11 and other federal laws. Withdrawal from the bankruptcy court is permissive under the statute "for cause shown." As the movant in this case, the Insurers bear the burden of showing cause. *In re NDEP Corp.*, 203 B.R. 905, 907 (D.Del.1996). Although the phrase "for cause shown" is not defined in the statute, the Court of Appeals for the Third Circuit has set forth five factors that a district court should consider in determining whether "cause" exists for discretionary withdrawal. These factors include: (1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir.1990).

 Another factor that the district court should consider is whether the parties have requested a jury trial. Bankruptcy courts cannot conduct jury trials unless the parties consent. 28 U.S.C.A. § 157(e). However, assertion of a Seventh Amendment right to a jury trial, coupled with a refusal to consent to such trial before the bankruptcy court, is not of itself sufficient cause to justify discretionary withdrawal. *In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (Bankr. E.D.Pa.2001).

 Finally, it is important in assessing the propriety of withdrawing the reference to determine whether the action sought to be withdrawn is a core or non-core proceeding. *See* 28 U.S.C.A. § 157(b)(1). While the bankruptcy courts have jurisdiction to hear both core and non-core matters, the scope of the bankruptcy court's authority is different. When adjudicating core matters, the bankruptcy court may issue final orders and judgments. 28 U.S.C. § 157(b)(1). In non-core matters, the bankruptcy court has more limited powers. It may not issue final orders and judgments; rather, it must submit proposed findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C.A. § 157(c)(1).

Core proceedings include "allowance or disallowance of claims against the estate...and estimation of claims or interests for the purposes of confirming a plan under Chapter 11...but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution..." 28 U.S.C.A. § 157(b)(2)(B). While it is true that personal injury claims made in the context of a bankruptcy case must ultimately be "tried" in the district court, "...any contingent or unliquidated claim, the fixing or liquidation of which...would unduly delay the administration of the case..." may be "estimated for purpose of allowance..." 28 U.S.C.A. § 157(b)(5); 11 U.S.C.A. § 502.

 It is generally accepted that the claims allowance process constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B). *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (holding that the jurisdiction of the bankruptcy court is exclusive of all other courts with respect to the allowance and disallowance of claims); *In re Meyertech Corp.*, 831 F.2d 410, 417 (3d Cir.1987) (noting

that the process of allowance or disallowance of claims against the estate is a core proceeding); *see also In re Adelphia Communications Corp.*, 307 B.R. 404, 418 (Bankr.S.D.N.Y.2004) (" 'Because nothing is more directly at the core of bankruptcy administration . . . than the qualification of all liabilities of the debtor, the bankruptcy court[']s determination whether to allow or disallow a claim is a core function") (citation omitted). Furthermore, in the context of the claims allowance process, bankruptcy courts can, and do, exercise broad authority to decide issues involving the legal validity of proofs of claim, including those for personal injuries. For instance, bankruptcy courts can apply legal defenses to personal injury claims to determine their viability in the bankruptcy case and estimate personal injury claims for the purpose of determining the feasibility of a plan of reorganization. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 532 (Bankr.N.D.Ala.1986); *In re Johns–Manville Corp.*, 45 B.R. 823, 825–26 (S.D.N.Y.1984); *In re UNR Industries, Inc.*, 45 B.R. 322, 326–27 (N.D.Ill.1984).

## III. *DISCUSSION*

■ The Insurers have moved to withdraw reference of their objection to the Maritime Asbestos Claims on the ground that the issues raised in the objection are non-core and because withdrawal would promote judicial efficiency and uniformity. Contrary to the Insurers' submissions to this court, the Insurers' objection to the Maritime Asbestos Claims is nothing more than what it purports to be—an objection to the allowance of several proofs of claim in the bankruptcy proceeding. Under the above authorities, it is clear that ruling on the allowance of claims is a core bankruptcy court proceeding. This factor unequivocally weighs in favor of retaining the bankruptcy court's jurisdiction over the objection.

The five factors designated by the Court of Appeals for the Third Circuit to be weighed in ruling on a motion for permissive withdrawal of reference also unequivocally weigh in favor of leaving this matter before the bankruptcy court. *See In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir.1990). Contrary to the Insurers' assertions, withdrawal of the reference will not promote judicial efficiency or uniformity in bankruptcy administration. In fact, to even restate the Insurers' suggestion that transferring 30,000 personal injury claims, which may or may not ultimately be submitted to the Trust for payment, and which may or may not then be paid under a plan of reorganization that may or may not be confirmed by the bankruptcy court would promote efficiency reveals the inherent weakness of the position. The Insurers have not even alleged that withdrawal of the reference would reduce forum shopping or expedite the bankruptcy process. Nor can the motion to withdraw reference, filed almost a year after the objection was filed with the bankruptcy court, be deemed timely made. Therefore, each of the factors set forth by the Court of Appeals weighs in favor of denying the Insurers' motion.

Finally, we point out that even cases cited by the Insurers in support of their position actually support a decision to leave the objection within the jurisdiction of the bankruptcy court. For instance, the Insurers cite *In re United States Lines, Inc.*, 318 F.3d 432 (2d Cir.2003) as an exemplar of the proper way that other district courts have administered, and more importantly to them, expunged, asbestos claims. However, in that case, the district court was not directly involved in claim allowance proceedings, claim distribution procedures, expungement of claims,

or payment of claims. Rather, the bankruptcy court made all of those decisions, which were simply reviewed on appeal by the district court.

Ruling on the allowance of claims, and objections thereto, is a core bankruptcy proceeding. In this case, none of the permissive withdrawal factors justify withdrawal of the reference of the Insurers' objection to the allowance of the Maritime Asbestos Claims.

## IV. *CONCLUSION*

The Insurers' motion to withdraw the reference of their objection to allowance of claims is denied.